IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| VALMONT INDUSTRIES, INC., | ) | CASE NO.: 8:25-CV-161 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT AND JURY DEMAND** |
| | ) | |
| JOÃO REBEQUI, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Valmont Industries, Inc. ("Valmont" or "Plaintiff") for its claims against Defendant João Rebequi ("Rebequi" or "Defendant") states and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.     Valmont is a Delaware corporation, with its principal place of business in Omaha, Nebraska.

2.     Upon information and belief, Rebequi is an individual that resides in Omaha, Douglas County, Nebraska.

3.     Upon information and belief, Rebequi is not a minor, an incompetent person, or person in military service so as to be entitled to the benefit of the Service Members Civil Relief Act of 2003, 50 U.S.C. § 501 *et seq.*

4.     This is an action asserting federal and state law claims, including, inter alia, breach of contract, tortious interference with business and employment relationships,  misappropriation of trade secrets in violation of the Nebraska Trade Secrets Act (Neb. Rev. Stat. §§ 87-501 *et seq.*), violation of the Defend Trade Secrets Act (18 U.S.C. § 1836), breach of the duty of loyalty and unjust enrichment.

5.      Jurisdiction is proper in this Court because Valmont has asserted a federal claim under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.* This Court has supplemental jurisdiction as to the other state-law claims pursuant to 28 U.S.C. § 1367.

6.      The Court has personal jurisdiction over Rebequi because he was employed by Valmont, which is headquartered in Douglas County, Nebraska, and has transacted business in the State of Nebraska. In addition, Rebequi signed an agreement with Valmont that specifies Nebraska as the exclusive forum for the adjudication of disputes related to that agreement.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Valmont's claims occurred in the District of Nebraska.

## FACTUAL BACKGROUND

### Valmont Industries, Inc. Business

8.      Valmont is a diversified manufacturer of products and services for infrastructure and agriculture markets. Its agricultural segment consists of the manufacture of center pivot components and linear irrigation equipment for agricultural markets, including parts and tubular products, and advanced technology solutions for precision agriculture.

9.      Valmont manufactures and distributes proprietary mechanical irrigation equipment (also known as a center pivot) and related irrigation equipment parts under the Valley® brand name. Valmont also maintains a suite of advanced proprietary technology solutions to assist in reducing water and energy use in its center pivot systems; this includes advanced agronomy monitoring solutions, powered by Valmont-owned artificial intelligence and machine learning to detect water-related issues and determine proper irrigation specifications.

10.     Valmont markets and sells this proprietary equipment, technology and related irrigation services throughout the U.S., Brazil, Australia and worldwide.

11.     Valmont's customers are farmers, who are the end users of its products and technology, and the dealers and other business partners who distribute and market its products and services to those farmers (collectively, "Clients").

12.     Valmont leverages its proprietary technology, confidential information and trade secrets (collectively, "Confidential Information") in providing customized irrigation solutions for its Clients. Confidential Information includes but is not limited to: Valmont's Client-specific product formulations, irrigation subscription data, dealer, customer and other Client formulas and data related to individualize irrigation needs, marketing strategies, pricing, as well as dealer and distribution networks and marketing, sales strategies, Client lease agreements, financial data, operational data, proprietary business information relating to Valmont's pivot leasing business (such as Client preference data, pricing, financial methodology and calculations used to determine subscription fees, usage data, financing arrangements, and the status of contractual arrangements with the Clients).

13.     Confidential Information  is only made available to employees with a need to know such information due to their roles and employment. Valmont's product formulations and subscription data are not shared with Clients or others in the industry.

14.     Valmont derives its revenue from the business it conducts with its Clients, through the sale of its custom irrigation-related products and services.

15.     Unlike its competitors in the market, Valmont's business model involves strategically developing partnerships and relationships with both its dealer and farmer Clients to then develop custom irrigation solutions, in a combination of products and services, for those Clients.

16.     To that end, Valmont's relationship with its Clients is critical to its success; this is particularly true given the highly competitive and relationship-oriented nature of the agricultural irrigation market in the U.S., Brazil and Australia. Valmont has achieved a distinct competitive advantage and market share by preserving its relationships with its Clients and its employees, as well as by preserving the Confidential Information pertaining to those relationships.

## Rebequi's Employment with Valmont

17.     Rebequi was hired by Valmont in or around March 2013 and served as General Manager in Brazil until April 2017; he was promoted to Regional Vice President of the Latin American Region until November 2021. From October 2021 to September 2022 Rebequi was positioned in the Vice President of Global Solar Solutions for Agribusiness. Most recently, Rebequi served as the Vice President of Business Development and Strategy for Valmont Irrigation in Latin America.

18.     In his most recent role as Vice President of Business Development and Strategy, Rebequi managed the strategic growth for the Valley® irrigation brand and oversaw all mergers and acquisitions while simultaneously serving in a Client-facing capacity related thereto.

19.     Rebequi not only directed business development and strategic planning for the Valley® brand, but also oversaw the expansion and integration of newly acquired AI and machine learning tools into the Valmont strategy and business development. Rebequi also oversaw Valmont's irrigation-related products and services, including pivot leasing offerings, which are based on Valmont's Confidential Information.

20.     In connection and as a necessity to his role as the Vice President of Business Development and Strategy for Valmont Irrigation in Latin America, Rebequi gained knowledge of and was provided access to Confidential Information.

21.     Rebequi, being in his senior leadership role at Valmont, was one of the very few Valmont employees who had broad access to Confidential Information. Rebequi also had the ability to download said Confidential Information, without supervision, approval, or additional security.

22.     Rebequi was also the point of contact for various Clients and was responsible for developing and maintaining professional relationships with those Clients. Rebequi regularly communicated with the Clients on behalf of Valmont, regarding their business preferences and irrigations-related needs.

23.     Rebequi was and remains keenly aware of Client product and service needs related to global irrigation and agriculture, particularly in the U.S. and Brazil.

### Rebequi's Post-Employment Obligations to Valmont

24.     Rebequi's employment with Valmont ended effective October 3, 2023, in connection with a restructuring and reduction in force at Valmont. In connection with his separation, Rebequi entered into a Confidential Separation Agreement ("Agreement").

25.     Pursuant to the Agreement, and in exchange for severance pay, and other benefits Rebequi received, Rebequi agreed to abide by certain non-disclosure and non-solicitation provisions, which expressly prohibited Rebequi from disclosing Confidential Information and from soliciting certain Valmont Clients and employees for two (2) years following his separation from employment.

26.     Specifically, Section 3 of the Agreement provides, in relevant part:

**3.     Confidentiality:**

**You are subject to a continuing confidentiality obligation, as follows:**

**You acknowledge that during the course of your employment with the Company, you have had access to and learned about**

5

**confidential, secret and proprietary documents, materials and other information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to the Company (including the Released Parties, as defined below) or any of its affiliates or its predecessors, which includes but is not limited to: any scientific or technical information, design, process, procedure, formula, or improvement that is commercially valuable and secret; inventions or discoveries (whether source code or object code); methodologies; business and manufacturing processes and methods; supply chain resources, technical data; databases; pricing and sales data (including selling techniques); customer or prospective customer lists, and information including financial and business data, customer records and property; information relating to the development or maintenance of customer relationships and goodwill, names of vendors and suppliers (including lists, identities and contact information); business or marketing plans (including strategies, promotions, packaging or merchandizing); and forecasts, financial information, work in progress, and other technical or business information, personnel information (including, but not limited to information concerning the Company's payroll, benefits, compensation, salaries, employee hirings and terminations, employee appraisals, employee health medical information and all other information pertaining to the Company employees); strategies, budgets, and long-range strategic plans (including business plans or strategies) (collectively, "Confidential Information). You further acknowledge that this Confidential Information is a valuable, special and unique asset of the Company and that the Company would be irreparably damaged if the Confidential Information was disclosed and/or utilized by persons or entities other than the Company. Except as otherwise provided herein or required by law, you agree to maintain other than the Company. Except as otherwise provided herein or required by law, you agree to maintain all Confidential Information, whether or not in writing, concerning the Company, as confidential and to not disclose or cause the disclosure of the same to anyone or use such Confidential Information in any manner during your employment or following the Separation Date;**

27.    With respect to the non-solicitation of customers and employees, Section 5 of the

Agreement provides in pertinent part:

**5.    Non-Solicitation/Non-Competition:**

**In order to protect the Company against disclosure of Confidential Information referred to in paragraph 3(a) of this Agreement, and against the unfair loss of customers and clients, goodwill and employees of the Company, for a period of two (2) years following your Separation Date, you agree you will not, directly or indirectly, on your own behalf or on behalf of a third party:**

**Recruit, solicit, employ or engage the services of (as employee, consultant or agent) any officer, director or employee of the Company or solicit such person to terminate his or her employment and/or engagement with the Company to become employed by or engaged in any other business activity with whom you have become affiliated; and**

**Offer or provide, solicit to offer or provide, products or services that are the same or substantially similar to or competitive with those provided by the Company, to any of the Company's customers and clients with whom you actually did business and had personal contact while employed by the Company.**

28.    Valmont provided Rebequi a significant severance compensation and continuation of certain benefits in exchange for his acceptance of the terms of the Agreement and performed all conditions precedent and relevant in connection with the Agreement.

29.     On October 3, 2023, Rebequi acknowledged and signed the binding and enforceable Agreement.

### Rebequi's Post-Employment Conduct

30.    September 25, 2023, was Rebequi's final day of employment with Valmont.

31.    In late February of 2024, Valmont became aware the Rebequi may not be abiding by the terms of the Agreement.

32.    Specifically, Valmont learned that Rebequi was in possession of Valmont Confidential Information, had started a competing business which predated his separation from Valmont, and through the use of both, started a competing pivot leasing company in partnership with another former Valmont employee that offered similar irrigation products and services to

Valmont's competitors and Clients. This business was based on the same Confidential Information related to Valmont's subscription irrigation business that Rebequi misappropriated from Valmont both during and after his employment with the Valmont.

33.     Upon information and belief, Rebequi remains in possession of and has relied on Confidential Information in furtherance of this competing business and has provided such information to competitors of Valmont.

34.     Moreover, in early 2024, Rebequi, in violation of the Agreement, took steps to solicit and recruit Valmont employees to join him in his new ventures and consulting projects; at least two Valmont employees resigned their employment with Valmont and went to work with Rebequi because of Rebequi's solicitation and recruitment efforts.

35.     On February 24, 2024, in response to discovering these breaches, Valmont sent Rebequi a letter reminding him of his continued contractual obligations to Valmont under the terms of the Agreement and threatening litigation in the event he failed to comply.

36.     Following the letter and at Rebequi's request, and in an attempt to reach a resolution with Rebequi, Valmont met with Rebequi, in late June 2024 wherein Rebequi provided assurances to Valmont that he was not in violation of the Agreement and that going forward he would comply with the terms of the Agreement.

37.     Notwithstanding, Rebequi has continued to violate the terms of the Agreement and Nebraska law.

38.     As of the date of this filing, Rebequi continues to solicit Clients who fall within the scope of the Agreement despite his assurances during the June 2024 meeting.

39.     Within the past month, Rebequi has repeatedly contacted several Clients, including both Brazilian and Australian dealers with whom he did business and had personal contact while

employed by Valmont, for the purpose of providing products and services similar to or in competition with Valmont (on behalf of Valmont's competitors) and in an attempt to interfere with Valmont's existing business relationships.

40.    Rebequi has wrongfully relied upon the Confidential Information misappropriated from Valmont to solicit Clients.

41.    Furthermore, Rebequi continues to aggressively solicit and target Valmont's Clients to cancel and divert business away from Valmont and to Rebequi and its competitors. Specifically, Rebequi has targeted Valmont's largest Brazilian dealer who falls within the scope of the Agreement for the purpose of flipping that dealer to Rebequi and a competitor of Valmont.

42.    Rebequi has also contacted other Brazilian and Australian dealers that fall within the scope of the Agreement for the sole purpose of diverting the business away from Valmont and flipping those dealers to Rebequi and a competitor of Valmont. Again, while employed with Valmont, Rebequi conducted business with and had personal contact with these dealers.

43.    As a direct result of Rebequi's unlawful actions, several of Valmont's Clients have discontinued their business with Valmont and cancelled contracts with Valmont, and redirected that business to Rebequi and a competitor of Valmont.

44.    Rebequi continues to further his efforts to solicit the Clients and unfairly compete against Valmont by using the Confidential Information he obtained while working for Valmont and leveraging Valmont's goodwill.

45.    Rebequi also continues to solicit and recruit current employees of Valmont to leave their employment with Valmont. For example, as recently as February 14, 2025, Rebequi contacted two (2) current Valmont employees for the purpose of soliciting them to join a competitor of Valmont, with whom Rebequi is also now affiliated.

## CAUSES OF ACTION
## COUNT I –
## BREACH OF CONTRACT

46.     Valmont incorporates the statements and allegations set forth above as if fully set forth herein.

47.     Rebequi entered into the Agreement with Valmont upon his separation from Valmont's employment.

48.     The Agreement outlines Rebequi's rights and obligations related to his post-employment obligations to Valmont, which include: confidentiality and non-disclosure obligations, as well as post-employment restrictions on solicitation of employees and certain Clients.

49.     Valmont performed all conditions precedent and relevant in connection with the Agreement including providing Rebequi with severance compensation and benefits for agreeing to the confidentiality and non-disclosure obligations, as well as post-employment restrictions on solicitation of employees, and Clients of Valmont.

50.     Despite clear and unambiguous terms, Rebequi has breached the Agreement by:

   a.   Misappropriating, disclosing, and/or utilizing the Confidential Information, following his termination and/or while working for Valmont;

   b.   Disclosing Confidential Information belonging to Valmont to third parties and competitors of Valmont, without Valmont's authorization;

   c.   Directly and indirectly soliciting Valmont's Clients who fall within the scope of the Agreement's customer non-solicitation provisions for the purpose of providing or offering to provide products or services that are the same or substantially similar to or competitive with those provided by Valmont;

10

    d.   Recruiting, soliciting and employing current and former employees of Valmont to leave their employment and join Rebequi and a competitor of Valmont.

51.    Valmont will suffer irreparable harm if Rebequi continues to engage in conduct in breach of the Agreement.

52.    Valmont has suffered and will continue to suffer damages as a result of Rebequi's breaches, in an amount currently unknown but to be proven at trial, which include, for example, lost business, lost market share, lost Clients, lost goodwill, lost employees together with such other relief the Court finds just and warranted.

## COUNT II –
## TORTIOUS INTERFERENCE WITH BUSINESS AND CONTRACTUAL RELATIONS AND EXPECTATIONS

46.    Valmont incorporates the statements and allegations set forth above as if fully set forth herein.

47.    Valmont has had longstanding business relationships with the Clients formerly serviced by Rebequi; incidental to his employment with Valmont, Rebequi knew of the business relationships between Valmont and its Clients and the goodwill related thereto.

48.    Rebequi has, without privilege, willfully and knowingly interfered with or attempted to interfere with and continues to attempt to interfere with Valmont's existing and prospective business relations with its Clients, including but not limited to his improper interference with established Clients with whom he worked while employed by Valmont.

49.    At the time Rebequi solicited Valmont's Clients, Valmont had both existing and prospective valid contractual relationships with such Clients.

50.    Since leaving Valmont's employment, Rebequi has tortiously interfered with Valmont's business and contractual relations and expectations.

51.     Specifically, Rebequi has improperly solicited business from the Clients that fall within the scope of the Agreement including but not limited to various Valmont dealers in the U.S., Brazil, Australia and attempted to intentionally redirect that business to a competitor of Valmont with whom Rebequi has become affiliated since leaving Valmont.

52.     Rebequi's interference has caused certain Clients to cancel or reduce existing contractual agreements and business relationships with Valmont and redirect that business to Rebequi and a competitor of Valmont with whom Rebequi has become affiliated.

53.     Rebequi has also tortiously interfered with Valmont's business relationship with its current employees, by recruiting and soliciting those employees to start working for Rebequi and a competitor of Valmont with whom Rebequi has become affiliated.

54.     At least two of the current Valmont employees solicited by Rebequi have resigned from Valmont and are now working for Rebequi and a competitor of Valmont with whom Rebequi has become affiliated.

55.     Each of the Valmont employees recruited and solicited by Rebequi who are now working with Rebequi and a competitor of Valmont with whom Rebequi has become affiliated worked closely with Rebequi to produce the Client-specific deliverables that Rebequi oversaw in connection with his role at Valmont, and in reliance on Valmont's Confidential Information.

56.     Interference with Valmont's business relations by Rebequi is possible only because of his senior leadership role at Valmont and his intentional misuse of Confidential Information acquired during his employment with Valmont, as well as Rebequi's breach of his post-employment obligations to Valmont under the terms of the Agreement.

57.     Valmont has suffered and will continue to suffer damages as a result of Rebequi's breaches, in an amount currently unknown but to be proven at trial, which include, for example,

lost business, lost market share, lost Clients, lost goodwill, lost employees together with such other relief the Court finds just and warranted.

**COUNT III-**
**MISAPPROPRIATION OF TRADE SECRETS, NEB. REV. STAT. §§ 87-501 ET SEQ.**

58.    Valmont incorporates the statements and allegations set forth above as if fully set forth herein.

59.    Valmont possessed and continues to possess Confidential Information collected from years of servicing Clients.

60.    Confidential Information, as defined herein, constitutes "trade secrets" within the meaning of Neb. Rev. Stat. § 87-502(4).

61.    Confidential Information developed by Valmont provides Valmont with a competitive advantage in the industry by allowing Valmont to provide individualized custom irrigation solutions for its Clients which avoids sourcing such services and expertise from multiple service providers.

62.    Confidential Information derives independent economic value, actual or potential, from not being known to and not being ascertainable by proper means by other persons who can obtain economic value from its disclosure or use and are the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

63.    Valmont does not provide access to Confidential Information to all employees, and in fact only provides such trade secrets to those in a position to impact Valmont's business strategy and to grow Valmont's business, like Rebequi. Given the industry, product formulations, business strategies, Client data, and financial data related to products and services are incredibly proprietary and are key drivers of success.

64.    Valmont is entitled to the use and enjoyment of the Confidential Information

13

because it has expended years of time and a significant monetary investment in developing such Confidential Information. Valmont has made, and continues to make, reasonable efforts to maintain the secrecy of the Confidential Information throughout all times relevant to the claims herein.

65.    During and as a result of his employment with Valmont, Rebequi acquired, used, and currently possesses knowledge of the Confidential Information.

66.    Indeed, but for his superior knowledge as the Vice President of Business Development and Strategy for Valmont Irrigation – Latin America Valmont, which entailed overseeing  business development, strategic planning and maintaining Client relationships and goodwill, Rebequi would not have had access to the Confidential Information.

67.    Rebequi has used the Confidential Information for his own benefit as a means to secure the transfer of business and to otherwise solicit the business of Clients, including Clients with existing business relationships and agreements with Valmont in violation of the Agreement and common law.

68.    Rebequi, by engaging in the conduct described above, has misappropriated and continues to misappropriate, retain and misuse the Confidential Information for his personal benefit and the benefit of himself, his own business as well as for the benefit of competitors of Valmont. For example, Rebequi has used his knowledge of Valmont's' customer-specific product formulations and pricing to solicit customers from Valmont to its competitor.

69.    In using the Confidential Information, Rebequi knew or had reason to know that he acquired the same under circumstances given rise to a duty to maintain the secrecy of the information or limit the use of the Confidential Information and that the Confidential Information was obtained from Valmont.

70.     Rebequi's use of the Confidential Information described herein constitutes misappropriation in violation of Neb. Rev. Stat. § 87-504 and is without Valmont's permission, express or implied.

71.     Rebequi's conduct was and is willful, intentional and unprivileged and has caused and is causing irreparable harm and monetary damages to Valmont.

72.     As a proximate result of the Rebequi's conduct, Valmont has suffered and will continue to suffer damages, including but not limited to, the loss of Clients, sales, and revenue from Client sales in an amount currently unknown but to be proven at trial.

73.     Valmont is further entitled to injunctive relief, its actual losses and damages, and such other damages as permitted by Neb. Rev. Stat. § 87-504.

## COUNT IV –
## VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016, 18 U.S.C. § 1836, *ET SEQ.*

74.     Valmont incorporates the statements and allegations set forth above as if fully set forth herein.

75.     During his employment, Rebequi had access to Valmont's Confidential Information, which was gathered, created, and prepared at significant expense to Valmont; kept confidential by Valmont; not available to the general public; and gives Valmont a competitive advantage over those who do not know it, including competitors of Valmont.

76.     Confidential Information, as defined herein, constitutes a "trade secret" within the meaning of 18 U.S.C. § 1839(3) related to a product or service used in, or intended for use in, interstate or foreign commerce, and Valmont is authorized to bring this claim pursuant to 18 U.S.C. § 1836(b)(1) *et seq.*

15

77.     Valmont is entitled to the use and enjoyment of the Confidential Information because it has expended years of time and a significant monetary investment in developing such Confidential Information.

78.     Confidential Information was kept secret and is not generally known to, or ascertainable by proper means by others and as a result, have independent economic value to Valmont in connection with its business. But for his role as Vice President of Business Development and Strategy for Valmont overseeing business development, strategic planning and maintaining Client relationships and goodwill, Rebequi would not have had access to the Confidential Information.

79.     Valmont has made and continues to make reasonable efforts to maintain the secrecy of the Confidential Information throughout all times relevant to the claims herein. Valmont derives substantial independent economic value from the Confidential Information not being generally known to the public.

80.     Rebequi has engaged in an act or acts of misappropriation occurring on or after May 11, 2026. Specifically, Rebequi has acquired, used and disclosed Valmont's Confidential Information for his own benefit to secure the transfer of business and to otherwise solicit the business of Valmont's Clients, including those Clients with existing business relationships and agreements with Valmont despite knowledge that such acquisition, use and disclosure was improper.

81.     In using the Confidential Information, Rebequi knew or had reason to know that he acquired the same using improper means and under circumstances giving rise to a duty to maintain the secrecy of the information or limit the use of the Confidential Information and that the Confidential Information was obtained from Valmont.

16

82.     As a proximate result of Rebequi's conduct, Valmont has suffered and will continue to suffer damages, including but not limited to, the loss of Clients, sales, and revenue from Client sales in an amount currently unknown but to be proven at trial together with pre-judgment and post judgment interest, costs and attorney fees.

83.     Valmont is entitled to injunctive relief, its actual losses and damages, and such other damages as permitted by 18 U.S.C. § 1836(3).

**COUNT V –**
**BREACH OF DUTY OF LOYALTY**

84.     Valmont incorporates the statements and allegations set forth above as if fully set forth herein.

85.     As a Vice President of Business Development and Strategy, Rebequi owed a duty of loyalty to Valmont, in which he was required to act solely for the benefit of Valmont and refrain from competing with Valmont.

86.     Rebequi's duty of loyalty required him, at all times, to refrain from, among other things, misappropriating Valmont's Confidential Information and using and disclosing it during his subsequent employment or affiliation with Valmont's competitors.

87.     Rebequi breached his duty of loyalty to Valmont by engaging in the conduct alleged above while still employed by Valmont, including starting a competing business, soliciting the Clients of Valmont to conduct business with competitors of Valmont using Confidential Information which he obtained while he was employed by Valmont.

88.     Rebequi continues to rely on and use Confidential Information he obtained during his employment with Valmont in his post-employment relationships with Valmont's competitors and for the benefit of himself and the companies with which he is now affiliated.

89.     Unless restrained, enjoined, and ordered to specifically abide by the Agreement by order of this Court, Rebequi will persist in his breach of the duty of loyalty thereby causing irreparable harm.

90.     As a result of Rebequi's breach of his duty of loyalty, Valmont suffers damages in an amount to be determined at trial.

**COUNT VI –
UNJUST ENRICHMENT**

91.     Valmont incorporates the statements and allegations set forth above as if fully set forth herein.

92.     Valmont and Rebequi entered into the Agreement, under which Valmont agreed to provide severance benefits to Rebequi in exchange for Rebequi's compliance with specific terms and conditions outlined in the Agreement.

93.     Valmont complied with all conditions precedent in the Agreement and provided severance benefits to Rebequi, including a significant monetary payment to which he was not otherwise entitled, with the reasonable expectation that Rebequi would comply with all terms of the Agreement.

94.     Rebequi executed the Agreement and accepted and retained the severance benefits but failed to comply with the material terms and conditions of the Agreement, including but not limited to the confidentiality provisions and the customer and employee non-solicitation provisions of the Agreement.

95.     Valmont conferred this benefit upon Rebequi voluntarily, but with the expectation that Rebequi would adhere to the agreed-upon terms of the Agreement.

96.     Rebequi has been unjustly enriched by retaining the severance benefits without fulfilling his obligations under the Agreement, to the detriment of Valmont.

97.     Valmont has suffered financial harm and loss as a direct and proximate result of Rebequi's retention of the severance benefits without compliance.

98.     As a result of these actions, and Rebequi's other deceptive, unfair and unjust acts set forth herein, Rebequi has also been unjustly enriched at the expense and to the detriment of Valmont, based on his actions to solicit the business of the Clients for himself and/or on behalf of Valmont's competitors.  Rebequi is continuing to be unjustly benefitting from the wrongful acts set forth herein.

99.     As a result, Valmont has suffered damages in an amount currently unknown but to be proven at trial, together with pre-judgment and post-judgment interest, costs and attorney fees.

100.    Further, Valmont is entitled to an order permanently enjoining Rebequi from continuing to interfere with Valmont's business with Clients and requiring Rebequi to comply with his post-employment obligations outlined in the Agreement, together with such other relief the Court finds just and warranted.

101.    Valmont is also entitled to a constructive trust and an accounting of all opportunities, benefits, goodwill, or business obtained by Rebequi as a result of his wrongful acts alleged herein, together with any profits and income in which Rebequi has derived, received, and will in the future, derived or received, as a result of this conduct.

## PRAYER FOR RELIEF

WHEREFORE, by virtue of the forgoing, Valmont demands a judgment in its favor against Rebequi, and further provide the following relief:

1.     A preliminary and permanent injunction prohibiting:

   a.   Rebequi or an entity with which Rebequi is affiliated from using, disclosing, misappropriating, or retaining any Valmont Confidential Information or trade

secrets in violation of his Agreement and state and federal law,

b.    Rebequi from indirectly or directly soliciting Valmont Clients in violation of his Agreement; and

c.    Rebequi from otherwise interfering with Valmont's business or contractual relationships with its employees and Clients.

2.    Order the complete return of Valmont's Confidential Information (which includes trade secrets as defined by Neb. Rev. Stat. § 87-502(4) and 18 U.S.C. § 1839(3)) by Rebequi and an order Rebequi destroy any copies of such information in his possession.

3.    Damages sustained by Valmont as a consequence of Rebequi's breach of the Agreement, including the return of the severance compensation and benefits unjustly retained by Rebequi;

4.    Damages sustained by Valmont as a result of Rebequi's various breaches of the Agreement;

5.    Damages sustained by Valmont as a consequence of Rebequi's misappropriation of Valmont's Confidential Information, and violation of the NCPA and the DTSA, including but not limited to, an award to all revenue and monies received by Rebequi from improper use of and misappropriation of Valmont's trade secrets and confidential information;

6.    Damages sustained by Valmont as a result of the Rebequi's tortious interference with Valmont' business, including but not limited to, an order granting damages to Valmont in a sum to compensate Valmont for all Clients, business and employees lost as a result of Rebequi's actions;

7.    Extend the effective date of the Agreement to account for the period during which Rebequi was violating the Agreement and Valmont was denied the benefit of same, for a period to

be determined at trial;

8.  An award to Valmont for all compensatory damages related to Rebequi's contractual violations and tortious conduct in an amount to be proven at trial;

9.  An award to Valmont and a forfeiture by Rebequi and any affiliated entities of all gains, profits, and advantages derived by Rebequi's deceptive acts or breach of the Agreement and an order that the same be held in constructive trust for the benefit of Valmont;

6.  An award to Valmont of all prejudgment interest on all recoverable damages at the legal pre-judgment rate and interest on said sums at the legal judgment rate from the date of said judgment.

7.  An award to Valmont of the costs of the action as authorized by law.

8.  An award to Valmont for reasonable attorney's fees as authorized by law.

9.  An award to Valmont of all other equitable relief as the Court deems just and equitable.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues raised by this Complaint.

DATED this 28th day of February, 2025.

BY:/s/ Abigail M. Moland
Abigail M. Moland (NE Bar No. 23741)
Patrick D. Pepper (NE Bar No. 23228)
Britni A. Summers (NE Bar No. 26654)
McGrath North Mullin & Kratz, PC LLO
1601 Dodge Street, Suite 3700
Omaha, NE 68102
amoland@mcgrathnorth.com
ppepper@mcgrathnorth.com
bsummers@mcgrathnorth.com

ATTORNEYS FOR PLAINTIFF