IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

VALMONT INDUSTRIES, INC.,

Plaintiff,

vs.

JOAO REBEQUI, an individual;

Defendant.

**8:25CV161**

**MEMORANDUM AND ORDER**

This matter is before the Court on Valmont's Motion to Dismiss Joao Rebequi's counterclaims.  Filing No. 15.

Rebequi is a former Valmont executive who continued to work in the Brazilian irrigation industry after leaving the company.  Valmont believes these business activities breach the restrictive covenants in Rebequi's severance agreement.  After filing this lawsuit, Valmont's attorney sent a letter to Rebequi's business partners asserting as much.  Valmont—through an intermediary—also made similar statements to other players in the industry.  Rebequi counterclaimed, asserting these communications were defamatory and violated the Nebraska Deceptive Trade Practices Act ("NDTPA") (Neb. Rev. Stat. § 87-302(a)(9)).

Rebequi's counterclaims have a fundamental problem: under Nebraska law, communications by attorneys and parties related to ongoing litigation are absolutely privileged.  And he cannot avoid absolute privilege by repackaging his defamation claims under a different cause of action.  Applying absolute privilege, he fails to state a plausible claim for relief.

## BACKGROUND

This is a noncompete case.  The Court discussed irrigation industry, the provisions of Rebequi's severance agreement, and Rebequi's post-Valmont business activities in greater detail in its preliminary injunction order.  Filing No. 34.

Basically, Rebequi worked for many years as an executive with Valmont, focusing on the South American market.  Filing No. 14 at 11, ¶¶ 117–18.  Valmont terminated his employment in 2023.  *Id.* ¶ 120.  Rebequi signed a severance agreement that barred him from soliciting certain "customers and clients" for two years.  *Id.* at 12, ¶ 124.

After leaving Valmont, Rebequi continued to work in the irrigation industry as a consultant.  *Id.* at 11, ¶¶ 121, 123.  One of his business partners is Bauer—a global agribusiness firm that competes with Valmont.  *Id.* at 12, ¶ 124.  Valmont believes aspects of this work crossed the line and breached Rebequi's severance agreement.  So, on February 1, 2025, it filed this lawsuit.  Filing No. 1.

Shortly after filing this lawsuit, on March 3, 2025, Valmont's corporate counsel sent a letter to Bauer informing them of this litigation.  Filing No. 14 at 12, ¶ 124.  More specifically, the letter asserted "Mr. Rebequi has violated" the severance "agreement and the law by soliciting Valmont's customers, dealers, and employees, and by retaining Valmont's confidential information."  Filing No. 14-2 at 1.[1]  The letter went on to assert "that Bauer has been involved in these unlawful activities" and state "Valmont takes Bauer's actions seriously and is prepared to take appropriate legal action to protect its business and contractual rights going forward, in light of its pending litigation against Mr.

---

[1] Rebequi attached the letter to his counterclaim and Valmont does not deny its authenticity, so the Court can consider it to resolve Valmont's motion to dismiss.  *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931n.3 (8th Cir. 2012).

Rebequi . . .." *Id.* Based on these assertions, Valmont asked Bauer to "immediately cease all contact, affiliations and other activities related to Mr. Rebequi as it pertains to Valmont's interests as stated in this letter . . .." *Id.* at 2. Finally, Valmont instructed Bauer to retain records related to its relationship with Rebequi. *Id.* Rebequi alleges Valmont sent similar letters to other business partners. Filing No. 14 at 12, ¶ 126.

Beyond statements in the letters, Rebequi alleges "Valmont has directed Bernhard Kiep, a former Valmont employee, to reach out to others in the industry with whom Rebequi does business to advise them that Valmont has initiated litigation against Rebequi and that Rebequi is in violation of his Agreement with Valmont." *Id.* ¶ 127.

Rebequi counterclaimed for defamation and violations of the NDTPA. *Id.* at 12–13. He takes issue with two statements in the March 3 letter: (1) Valmont's statement that he "violated" the severance "agreement and the law by soliciting Valmont's customers, *dealers*, and employees, and by retaining Valmont's confidential information" and (2) Valmont's statement that his severance agreement "prohibits him from soliciting Valmont employees, certain Valmont customers (*including dealers*) and using or disclosing Valmont's confidential information for a period of two years." *Id.* at 12–13, ¶¶ 124, 125, 129–30. Specifically, Rebequi contends dealers are not within the scope of his noncompete, so he is not in breach, and thus Valmont made false statements of fact. Filing No. 27 at 4–5; *but see* Filing No. 34 at 13 (concluding "Valmont is likely to succeed on its argument that the Severance Agreement's reference to 'customers and clients' includes dealers").

Valmont moves to dismiss Rebequi's counterclaims. Filing No. 15. The Court has federal question jurisdiction over the parties' dispute under 28 U.S.C. § 1331 because

3

Valmont sued under the federal Defend Trade Secrets Act (18 U.S.C. §§ 1836-1839). The Court has supplemental jurisdiction over Rebequi's state law counterclaims under 28 U.S.C. § 1367 because they are "part of the same case or controversy" as Valmont's federal claim.

## LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) empowers the Court to dismiss a counterclaim for "failure to state a claim." The question on a 12(b)(6) motion is whether the complaint contains sufficient factual allegations to "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true" or a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*, 550 U.S. at 555. On a motion to dismiss, the Court must "draw all reasonable inferences in the nonmovant's favor." *Ingram v. Arkansas Dep't of Correction*, 91 F.4th 924, 927 (8th Cir. 2024) (internal citations omitted).

Nebraska substantive law governs. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). The Court is "bound in [its] interpretations of Nebraska law by the decisions of the Nebraska Supreme Court." *Packard v. Darveau*, 759 F.3d 897, 901 (8th Cir. 2014) (quoting *Lindsay Mfg. Co. v. Hartford Acc. & Indem. Co.*, 118 F.3d 1263, 1267 (8th Cir. 1997). If the Nebraska Supreme Court has not considered an issue, the Court must "predict what the court would decide if it were to address the issue" based on "relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data." *Id.* (internal quotations omitted).

4

## DISCUSSION

Rebequi does not state a plausible claim for relief, so his counterclaims must be dismissed.  Each statement identified in his counterclaim is protected by absolute privilege —dooming his defamation claim.  And he cannot avoid absolute privilege by repackaging his defamation claims as a different cause of action—dooming his NDTPA claim.

### A. Defamation (Count I).

Rebequi did not plead an "an unprivileged publication to a third party" requiring dismissal of his defamation claim. *Palmtag v. Republican Party of Nebraska*, 999 N.W.2d 573, 585 (Neb. 2024).  To succeed on his defamation claim under Nebraska law, Rebequi must show "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Id*.  The second element is dispositive, so the Court need not address Valmont's other arguments.

Statements made by attorneys and parties in connection with litigation are absolutely privileged and cannot support a defamation claim. *See Kocontes v. McQuaid*, 778 N.W.2d 410, 415 (Neb. 2010).  "Absolute privilege stems from a public policy determination that weighs the public interest in free disclosure against the harm to individuals who may be defamed." *Id*.  Litigation privilege exists "to immunize participants in the judicial process so as to assure all concerned that they can speak truly (or in their client's interest in the case of a lawyer) without fear of personal liability or an expensive lawsuit."  Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, The Law of Torts § 539 (2d

5

ed.); *McKinney v. Okoye*, 806 N.W.2d 571, 576 (Neb. 2011); Restatement (Second) of Torts, ch. 25, topic 2, tit. 3, intro. note (A.L.I. 1977).  Absolute privilege applies even to statements made "out of vindictiveness" or "motivated by malice, hatred, and ill will." *Elbert v. Young*, 977 N.W.2d 892, 903 (Neb. 2022).  "[T]his privilege applies to statements within a judicial proceeding and statements preliminary or ancillary to judicial proceedings." *McKinney*, 806 N.W.2d at 576.

Absolute immunity bars Rebequi's defamation claim.  "Absolute privilege attaches to defamatory statements made incident to, and in the course of, judicial or quasi-judicial proceedings if the defamatory matter has some relation to the proceedings." *Elbert*, 977 N.W.2d at 900.  For example, in *Prokop v. Cannon*, the Nebraska Court of Appeals held that statements made to the news media by an attorney regarding a pending case "were well within the privilege." *Prokop v. Cannon*, 583 N.W.2d 51, 59 (Neb. Ct. App. 1998). Here, Valmont's allegedly defamatory statements fall into two buckets: (1) statements in letters sent by Valmont's corporate counsel to Rebequi's business partners, and (2) statements made by a third party on Valmont's behalf to others in the irrigation industry. The Court addresses each in turn.

The statements in the letter to Bauer are absolutely privileged.[2]  The alleged statements were made by Valmont's corporate counsel.  *McKinney*, 806 N.W.2d at 576; Restatement (Second) of Torts § 586.  The letter identifies this litigation and asserts Valmont's theory of the case—that Rebequi breached his severance agreement by soliciting Valmont dealers.  The letter instructs Bauer to retain documents related to its

---

[2] Rebequi alleges—and the Court assumes—that the Bauer letter is representative of the letters sent to Rebequi's other business partners, so this analysis applies equally to those letters.  *See* Filing No. 14 at 12, ¶ 126.

relationship with Rebequi for future use in this litigation.  To explain what records Bauer needed to preserve, Valmont had to explain the nature of its claims against Rebequi.[3] So, there is a straight line between the statement in the letter to Bauer and future discovery in this litigation.  Put another way, Valmont made the allegedly defamatory statements in a letter about this litigation to a potential witness in this litigation instructing the witnesses to preserve documents for use in this litigation.  So, the Court has no trouble concluding the allegedly defamatory statements in the Bauer letter were "made incident to . . . judicial . . . proceedings" and have "some relation to the proceedings." *Elbert*, 977 N.W.2d at 900.  So, they are absolutely privileged and cannot support a claim for defamation.

The same goes for Rebequi's allegation that Valmont made similar statements through a former employee in the region.  Assuming, Rebequi pled a basis for vicarious liability (*see* Restatement (Second) of Agency § 254), the alleged statements are absolutely privileged.  Specifically, Rebequi alleges the statements are attributable to Valmont -- a party to this litigation. *McKinney*, 806 N.W.2d at 576; Restatement (Second) of Torts § 587.  *Prokop* controls.  There, like here, a participant in litigation—there an attorney, here a party—made statements to a third party—there the press, here a former employee—for the purpose of publicizing their position in the underlying litigation to the interested public. *Prokop*, 583 N.W.2d at 59.  So, here like there, Valmont's statements fall "were well within the privilege." *Id.*

---

[3] Not only that, in the same letter Valmont informed Bauer that it was willing to sue under the same theory. So, to tell Bauer what activities it needed to cease and desist, Valmont had to explain the nature of its claims against Rebequi. Thus, besides being made "incident to" this litigation, Valmont's statements were "preliminary to a proposed judicial proceeding" against Bauer. *Cummings v. Kirby*, 343 N.W.2d 747, 748 (Neb. 1984) (quoting Restatement (Second) of Torts § 586).

Each statement identified in Rebequi's counterclaim is absolutely privileged. Without "an unprivileged publication to a third party" his counterclaim does not state a plausible claim for relief. *Palmtag*, 999 N.W.2d at 585.

### B. NDTPA (Count II).

Rebequi's claim under the NDTPA is likewise barred by absolute privilege. Under Nebraska law, absolute privilege applies equally to non-defamation claims "so long as the injury pleaded stemmed from the allegedly defamatory statement." *Kocontes*, 778 N.W.2d at 424–25. This makes sense. "If the policy which affords an absolute privilege in defamation actions 'is really to mean anything[,] then [a court] must not permit its circumvention by affording an almost equally unrestricted action under a different label.'" *Id.* (quoting *Rainier's Dairies v. Raritan Val. Farms*, 117 A.2d 889, 895 (N.J. 1955)) (alterations in original). Following that logic, Nebraska courts have applied absolute privilege to claims for tortious interference, intentional infliction of emotional distress, and medical malpractice that "revolv[ed] around an allegedly false statement." *Id.* (collecting cases). Here, Rebequi's theory is Valmont "[d]isparage[d] the goods, services, or business of another by *false or misleading representation of fact*." Neb. Rev. Stat. § 87-302(a)(9) (emphasis added). The alleged "false . . . representation[s] of fact" are the same as the statements underlying his defamation claim. And he seeks relief—damages stemming from the allegedly false statement—as his defamation claim. Indeed, the Nebraska Supreme Court has applied common law limits on claims for "libel or slander" to a claim under § 87-302(a)(9) which suggests that this type of NDTPA claim is planted in the same common law soil as a defamation claim. *Sid Dillon Chevrolet-Oldsmobile-Pontiac, Inc. v. Sullivan*, 559 N.W.2d 740, 745–47 (Neb. 1997). So, Rebequi's NDTPA

claim—which "stem[s] from the allegedly defamatory statement"—is his defamation claim dressed in new clothes and barred by absolute privilege. *Kocontes*, 778 N.W.2d at 424–25.[4]

### C. Leave to Amend

Rebequi's counterclaims are barred by absolute privilege, which cannot be overcome by additional facts. Therefore, the Court will not grant leave to amend under Fed. R. Civ. P. 15(a)(2). *See Saylor v. Jeffreys*, 131 F.4th 864, 869 (8th Cir. 2025) (recognizing "motion to amend complaint properly denied if amendment would be futile"); *Corriveau v. City of Anoka, Minnesota*, No. CV 10-3933 (SRN/FLN), 2011 WL 13233440, at *2 (D. Minn. Feb. 3, 2011) (concluding a proposed amendment of a defamation claim was futile because allegedly defamatory statements were protected by absolute privilege).

### CONCLUSION

Absolute privilege reflects a policy judgment that the proper consequence for asserting an unsuccessful position in litigation is losing the lawsuit not paying the winner tort damages for defamation. While Rebequi may ultimately win this case, Valmont is allowed to assert its position without fear of retrospective defamation liability.

---

[4] Even setting aside absolute privilege and assuming Valmont "[d]isparage[d] Rebequi's "business . . . by false or misleading representation of fact" dismissal would still be appropriate for two reasons. First, Neb. Rev. Stat. § 87-303—the NDTPA's remedy provision—"provides only for equitable relief consistent with general principles of equity" and does not create "a private right of action for damages." *Reinbrecht v. Walgreen Co.*, 742 N.W.2d 243, 247 (Neb. Ct. App. 2007). Here, Rebequi seeks only damages. Everyone agrees this bars his claim as pled. *See* Filing No. 16 at 9–10 (Valmont); Filing No. 27 at 7–8 (Rebequi); *Triple 7, Inc. v. Intervet, Inc.*, 338 F. Supp. 2d 1082, 1087 (D. Neb. 2004) (the Court). Second, even if Rebequi asked for an injunction, he must plausibly allege a "likelihood of future harm" to state a claim for one. *Reinbrecht*, 742 N.W.2d at 247. Here, Rebequi's factual allegations all relate to past defamatory statements and his single refence to future harm—Rebequi has suffered and will continue to suffer damages as a result of Valmont's deceptive trade practices" (Filing No. 14 at 13, ¶ 132)—is purely conclusory.

9

THEREFORE, IT IS ORDERED:

1. Valmont's Motion to Dismiss (Filing No. 15) is granted.

Dated this 28th day of July, 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge